## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STEPHEN GREENE,

          **Plaintiff,**

v.                                                  CIV No. 03-0103 LH/DJS

PATRICIA MADRID, Attorney
General of the State of New Mexico,
and STUART BLUESTONE, Deputy
Attorney General, in their individual
and official capacities,

          **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court for consideration of Defendants' motion to dismiss or alternatively, for summary judgment (Docket No. 8).[1] The Court having considered the briefs and relevant case law, for the reasons that follow, concludes that Defendants' motion shall be **granted** and that this matter shall be **dismissed**.

## I.  Legal Standards

---

[1] The full title of this motion is: "Motion to Dismiss, or, in the Alternative, for Summary Judgment (Based in Part on Qualified Immunity) and Legal Authority in Support of Motion."

1

Defendants have brought their motion, as noted above, as a motion to dismiss, or alternatively as a motion for summary judgment. The Court has considered materials submitted by the parties that are extrinsic to the Complaint, particularly those attached to Greene's response brief. For this reason, the Court will consider this motion as being one for summary judgment. *See David v. City of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996).

An important function of summary judgment is to eliminate factually-unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A movant for summary judgment under Rule 56 bears the initial burden of showing the Court that there is an absence of evidence to support the nonmoving party's case. *Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997). The nonmovant may not rest upon his/her pleadings, but must set forth specific facts showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e). This means that the nonmovant must produce evidence supporting his claims. *See Adler v. Wal-Mart Stores*, *Inc.*, 144 F.3d 664, 671, n.1 (10th Cir. 1998). Although the parties dispute many subsidiary factual issues, once a movant has identified an element of a claim that the nonmovant cannot prove, all other factual disputes concerning that claim become immaterial, and the court may properly enter summary judgment. *See Celotex*, 477 U.S. at 322-23. The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to him; however, that material must contain probative evidence that would allow a trier of fact to find in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## II.  Background

The Complaint in this matter contains three counts: two for alleged constitutional violations and one containing a state contract law claim. The alleged constitutional claims are for violations of

the First Amendment rights to representation by, and communication with, counsel without retaliation, and of Fourteenth Amendment rights to substantive due process and equal protection.

The relevant and material facts in this matter are undisputed.  In July 1999, the New Mexico Board of Psychologist Examiners ("the Board") issued a "Notice of Contemplated Action" ("NCA") to Plaintiff Greene ("Greene"), who was a licensed psychologist in New Mexico.  The NCA indicated that unless Greene satisfactorily refuted accusations against him, his license would be suspended or revoked.  Greene obtained an attorney, Frank Spring, to represent him in this disciplinary proceeding. Defendant Patricia Madrid is and was at all relevant times the Attorney General for the State of New Mexico.  Defendant Stuart Bluestone is and was at all relevant times the Deputy Attorney General for the State of New Mexico, with supervisory authority over  all assistant attorneys general, including a party unnamed in this lawsuit, Bennett Cohn.  Mr. Cohn was the prosecutor assigned to handle this matter against Greene.[2]

Following issuance of the NCA, the disciplinary matter proceeded.  It is undisputed that the role of all attorneys general in this matter was to function as the Board's lawyer, not as a party to the proceedings, or as a party to the settlement agreement ultimately reached by the Board and Greene.

In late 2000, a Stipulation for Settlement was entered into by Greene and the Board. It was filed with the Court as a supplemental exhibit to the Complaint (*See* Docket No. 6).  It is undisputed that Greene entered into this settlement stipulation on advice of his attorney and that it was a negotiated agreement.  The  signatories to this stipulation  are Stephen S. Greene, Frank L. Spring,

---

[2]  The Attorney General' s authority to act as counsel for state boards is created by statute.  *See* NMSA 1978, § 8-5-2(C), "Duty of attorney general", which states that except as otherwise provided by law, the attorney general shall: "(C)  prosecute and defend all actions and proceedings brought by or against any state officer or head of a state department, board or commission, or any employee of the state in his official capacity."

as attorney for Greene, Bennett S. Cohn as Assistant Attorney General Administrative Prosecutor, and Luis A. Vargas, as Chair of the New Mexico State Board of Psychologist Examiners.   The stipulation stated that Greene would pay the Attorney General's office $6,000 for costs of prosecution and $63.48 to the Board for costs.  It provided that these costs were payable in full within sixty days of Board approval of the stipulation.[3]  It further provided that Greene would accept a Letter of Advisement, which would not constitute a negative action or finding such that this manner of disposition would be reportable to the Healthcare Integrity and Protection Data Bank.  It further provided that the Letter of Advisement does not represent an action of a type requiring a report to the Association of State and Provincial Psychology Board's Disciplinary Data Report.  Finally, it provided that the parties agree that the Letter of Advisement will serve to instruct Greene and similarly situated practitioners as to the preferred course of action in similar circumstances.

Paragraph (G) of the New Mexico statute providing for NCAs and Board hearings states:

> G.  Licensees shall bear all costs of disciplinary proceedings unless they are excused by the board from paying all or part of the fees or if they prevail at the hearing and an action specified in Section 61-1-3 NMSA 1978[4] is not taken by the board.

NMSA 1978 § 61-1-4(G).

## III.  Discussion

### A.  Ultra Vires Doctrine

Greene repeatedly argues in his response brief that the "essential legal issue" is whether or not the Attorney General's office had proper authority to demand payment of $6,000 as a condition

---

[3]  It is undisputed that the Board's Chair executed the settlement document on November 21, 2000.

[4]  NMSA 1978 61-1-3 is titled, "Opportunity for licensee or applicant to have hearing."

of dismissal of a licensing board's disciplinary proceedings.  (Response Brief at 1, 4, 5, 7-11, 13, 14, 16-18).  He argues that the actions of Defendants were "ultra vires"[5], and that accordingly, Defendants are not entitled to various immunities raised in their motion.  For this reason, the Court will address this "ultra vires" argument prior to analyzing the specifics of Defendants' motion.

Clearly Greene is not challenging the Board's authority, but rather the "*Attorney General's* authority to demand an arbitrary payment  –  in this case, of $6,000.00 –  as a condition of settlement."  (Pltf's Resp at 5)(no emphasis added).   As noted above, it is undisputed that Defendants' sole role in these proceedings, was to act as the Board's lawyer, not as a party to the proceedings or to the settlement agreement between Greene and the Board.  Similarly, Mr. Spring is not considered by the Court to be a party to the proceedings or to the settlement agreement.

Greene's true objection in this lawsuit is the requirement that he pay $6,000  for costs of prosecution to settle the pending disciplinary matter against him.  There is no dispute that this was a requirement made by the Board, not by the Board's attorney.  This cost was not assessed or imposed by Defendants, but rather, by the Board.  Greene, in the Complaint, acknowledges that it was the Board that proposed settlement terms (Compl. ¶ 37), and that in October 2000, "the Board and Dr. Greene reached a Settlement Agreement . . . ."  (*Id*. ¶ 44).

Contrary to Greene's repeated assertion that this case is about the authority of Defendants to impose such a settlement, as stated in § 8-5-2(C), the Attorney General's duty and authority are

---

[5]  The ultra vires doctrine "excepts from the Eleventh Amendment bar suits against officers acting in their official capacities but without any statutory authority, even though the relief would operate against the State." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25 (1984).  Likewise, the ultra vires doctrine allows a plaintiff to overcome the doctrine of federal sovereign immunity where it is alleged that a federal officer has acted outside of his or her authority.  *See Maryland Dept. of Human Resources v. Dept. of Health and Human Services*, 763 F.2d 1441, 1448 (D.C. Cir. 1985).

limited to prosecution of proceedings brought by the Board.  As a general premise, a third party cannot recover damages from an attorney representing another party, claiming that the contents of a contract entered into by the two parties are contrary to law or unconscionable.  Any action for damages or for recission or reformation of the contract must be pursued against the other party, not against that party's attorney.  Greene has failed to bring this action against the other party to the agreement, the Board, and is hereby barred from recovering on the theory that payment of the $6,000 was wrongfully imposed by these named Defendants.

The Court emphasizes that these terms were pursuant to a settlement, stipulated to by both parties.  If Greene were unhappy with the terms of the settlement, he had the option of refusing to settle and instead proceeding through the hearing process.  Had a hearing occurred, if he were unhappy with the decision issued subsequently by the Board, he could have obtained a review of the decision in the district court.  *See* NMSA 1978 § 61-1-17.  Greene did not take these steps, but now wants the benefit of the advantages afforded to him by the settlement (i.e., no adverse findings against him), seeking to avoid the part of the settlement that was not advantageous to him (i.e. the $6,000 payment).  As noted in Paragraph 54 of the Complaint, when Greene sought reimbursement of the $6,000, "Defendants refuse to reimburse the money, and instead have suggested that Plaintiff file a motion to withdraw the settlement with the Board, the result of which would be reinstatement of the disciplinary action against Plaintiff."

Count II is premised upon allegations that Defendants demanded, accepted and refused to refund the $6,000 in this case, and had a policy of requiring licensees to make payment to the Attorney General's Office as a condition of settlement of a disciplinary action.  As noted above, the Court concludes, based on the undisputed facts before it, that the requirement of payment of the

6

costs of prosecution was the Board's requirement, not that of its attorney.  Because Defendants may not be liable for the terms of the settlement agreement, Count II shall be **dismissed**.  Similarly, Count III entitled "State Contract Law" alleges that the "provisions of the Settlement Agreement . . . obligating Plaintiff to pay $6,000 to the Attorney General's Office are contrary to law and to public policy" (Compl. ¶ 64); that Greene's payment was obtained through economic duress and through the duress of a threat to his professional status and reputation (*Id*. ¶ 65); and that the operative paragraphs of the Settlement Agreement are void and that Defendants should be required to return the $6,000 to Greene.  Under the same reasoning, Count III is hereby **dismissed**.  Furthermore, to the extent that any portion of the Complaint alleges liability of the Defendants for imposition of the $6,000 payment, it will be disregarded. (*See* ¶¶  53, 62 also).

An ultra vires claim rests on "the officer's lack of delegated power.  A claim of error in the exercise of that power is therefore not sufficient." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690 (1940), *quoted in Painter v. Shalala*, 97 F.3d 1351, 1358 (10th Cir. 1996).  In this instance, Greene is not disputing that Defendants lacked the authority to prosecute this matter for the Board, but rather that, in that capacity, Defendants lacked the authority to demand what he terms as an arbitrary payment and basically, that Defendants acted in an unprofessional manner. This amounts to an argument that Defendants erroneously exercised their power, which as just noted, is not sufficient.  *Id*.  For these reasons, I conclude that this case does not fall within the ultra vires doctrine.


**B.  Consideration of Defendants' Motion**

Having concluded that the named Defendants cannot be liable for imposition and acceptance

of the terms of the settlement agreement, it is now incumbent on the Court to examine the allegations and record as to the actual conduct of the two named Defendants, to ascertain whether there is any potential liability for the performance of their statutory duty of prosecution in this matter.

As noted above, Cohn was the Assistant Attorney General assigned to prosecute this matter against Greene.  The Complaint alleges improper prosecutorial conduct by Cohn[6], and that "Madrid and Bluestone knew or should have known that Cohn had lost the ability to act as a reasonable administrative prosecutor, and that Cohn's handling of the disciplinary action was not conducted in a legitimate prosecutorial manner."  (Compl. ¶ 33).  Further, the Complaint alleges that "Defendants knew or should have known of, and have ratified and condoned, Cohn's actions against Plaintiff." (*Id*. ¶ 55).  Except for those allegations that Defendants were liable for the terms of the settlement agreement, which have been discussed above, and expressly excluded from consideration in this matter, this is the entire content of the allegations specifically made against Defendants Madrid and Bluestone.  The exclusion of these irrelevant allegations leaves in the case only Count I, a claim for First Amendment violations.

Count I alleges a violation of 42 U.S.C. § 1983 based upon a two-fold assertion of Greene's First Amendment rights under the United States Constitution and pursuant to Article II, Section 17 of the New Mexico Constitution.  The first assertion is of a right to representation by counsel of his choice in a disciplinary action against him, free of retaliation (Comp. ¶ 57a), and the second is of the right to communication through his counsel with the Attorney General, free of retaliation (*Id*. ¶ 57b).

---

[6]   The relevant allegations of the Complaint are that Cohn's attitude was hostile and acrimonious, beginning with a series of letters in November 1999, some of which are quoted in the Complaint (Comp. ¶¶ 30, 36);  that Cohn's hostile attitude contaminated his ability to handle the Board's disciplinary action against Dr. Greene in a reasonable manner  (*Id*., ¶ 31); and that many of Cohn's decisions and actions throughout the proceeding were not legitimate prosecutorial functions (*Id*. ¶ 32).

Defendants Madrid and Bluestone are sued in their official and individual capacities, under principles of both direct and supervisory liability.

## 1.  Potential Liability of Madrid and Bluestone in Their Official Capacities

Defendants correctly argue that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1156 (10th Cir. 2001). Thus, these two Defendants acting in their official capacities for the State, may not be sued for damages under that section. This does not provide these Defendants with absolute immunity however. When sued for injunctive relief, they would be considered "persons" under § 1983, because official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. 58, 71 n.10; *see also Stidham*, 265 F.3d 1144, 1156.

Although the section entitled "Nature of the Case" mentions injunctive relief, the actual Complaint makes no specific request for injunctive or prospective relief.[7] Given the lack of a request for injunctive or prospective relief, the Court concludes that these Defendants may not be sued in their official capacities.

## 2.  Potential Liability of Madrid and Bluestone in Their Individual Capacities

To prevail on a claim for damages for a constitutional violation pursuant to § 1983, a plaintiff must establish the defendant acted under color of state law and caused or contributed to the alleged

---

[7] This is true, contrary to the incorrect assertion in footnote 3 of Greene's brief, indicating that paragraph 54 of the Complaint seeks an injunction.

violation. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). The plaintiff must establish that the defendant personally participated in the alleged violation. *Bennet v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Though state actors who participate in a violation in a supervisory role may incur liability, there is no concept of strict supervisory liability under § 1983. *Jenkins* at 994. In other words, it is not enough for a plaintiff to show a defendant was in charge of other state actors who actually committed the violation. *Id*. Instead, just as with any individual defendant, the plaintiff must establish "a deliberate, intentional act by the supervisor to violate constitutional rights." *Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992)(*citing City of Canton*, 489 U.S. 378, 389 (1989).) "A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Jenkins* at 995 (*citations omitted*).

In this instance, Greene's alleged First Amendment violations involve interference with his right to representation by counsel and with his right to communication through his counsel with the Attorney General (Comp. ¶ 57). As noted above, the Complaint alleges knowledge, ratification and approval by these Defendants of Cohn's actions. (*See* Comp. ¶¶ 33, 55). It is critical to determine what Greene has factually established, in response to Defendants' motion, because the mere fact that they were in supervisory roles is not enough to subject them to individual liability.

Greene characterizes Cohn's letters as illustrating an unprofessional and vindictive attitude and states that Defendant Patricia Madrid received copies of this letters. There is no proof before the Court that copies of these letters were in fact sent to Madrid; this is merely an allegation of Paragraph 30 of the Complaint. In his brief, Greene cites to Paragraphs 54 and 55 as support for the argument that Defendants knew about, acquiesced in and ratified Cohn's allegedly unconstitutional conduct.

10

Again, these are mere allegations and not the type of proof that will defeat a motion for summary judgment.

Finally, Greene cites from the "Annual Report 2000" by the Office of the New Mexico Attorney General, attached as Exhibit 1-b to Greene's brief.  A section entitled "AGO Resources Used to Generate Revenue for Other State Agencies" mentions a "new cost assessment policy for administrative prosecutions," that the Attorney General's Office anticipated would generate substantial monies for the general fund during the next fiscal  year.   Greene argues that this document establishes that Defendant Madrid  knew about and approved the new cost assessment policy  (Pltf's Resp. at 12-13).   He makes no argument however as to how this fact could establish a claim against these Defendants in their individual capacities.  The citation from the "Annual Report 2000" does nothing to change this Court's conclusion that these Defendants are not subject to liability for the terms of the settlement agreement to which they were not parties, nor does it establish any deliberate, intentional act by either Defendant to violate constitutional rights.  Knowledge of this cost assessment policy by these Defendants does not establish knowledge of an unconstitutional interference with Greene's right to representation by counsel or any alleged right to communication through his counsel with the Attorney General.  Greene has not designated any specific facts to make a showing sufficient to establish the existence of intentional interference of Greene's First Amendment rights by these Defendants, in order to survive summary judgment.  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).   There is simply no showing that these Defendants, as supervisors, personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance.  *Jenkins* at 995. For this reason, the § 1983 claim cannot be brought against these Defendants in their individual capacities.

11

**WHEREFORE**, for the reasons stated herein, Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment (Based in Part on Qualified Immunity) and Legal Authority in Support of Motion (Docket No. 8) shall be **granted and this case shall be dismissed in its entirety.**

    **IT IS SO ORDERED.**

_____

**SENIOR UNITED STATES DISTRICT JUDGE**